Honorable Gregory Banks Island County Prosecutor P.O. Box 5000 Coupeville, WA 98239-5000
Dear Prosecutor Banks:
You have asked for our opinion regarding a question that we have paraphrased as follows: Do a county and a city have the authority toenter into an interlocal agreement pursuant to RCW 39.34.080, underwhich the city would contract to use the services of Washington StateUniversity's "extension program" with the county to provide educationalprograms and other services concerning the potential effects of climatechange?
 BRIEF ANSWER
For the reasons described below, we conclude that the answer to your question is yes. A county and a city have authority to enter into an interlocal agreement of the type described in your question.
 ANALYSIS
The Legislature has declared that examining and addressing the effects of climate change is of significant importance for the State of Washington. In particular, the Legislature in 2002 stated:
It is in the public interest to support efforts to promote discussion and understanding of the potential effects of climate change on Washington's water supply, agriculture, natural resources, coastal infrastructure, public health, and [original page 2] economy, and to encourage the formulation of sound recommendations for avoiding, mitigating, and responding to those effects.
Laws of 2002, ch. 250, § 1(3). Accordingly:
The legislature authorizes the establishment of the Washington climate and rural energy development center in the Washington State University energy program to serve as a central, nonregulatory clearinghouse of credible and reliable information addressing various aspects of climate change and clean energy activities.[1]
RCW 28B.30.642.
The Washington State University Cooperative Extension (WSU Extension) has had a contractual "Memorandum of Agreement" (Agreement) with Island County for the provision of educational services since 1994. The Agreement explains that the mission of WSU Extension includes "assist[ing] the people of Washington State in making informed decisions through research and experience-based educational programs" and "aid[ing] communities in developing and adapting to changing conditions". Under the county's existing agreement with WSU Extension, the county provides funding to pay (1) part of the costs of the staff provided by WSU Extension and (2) operating expenses for educational programs for county citizens.
Your question asks whether the Town of Coupeville may enter into an interlocal agreement with Island County, under which the town would reimburse the county for costs incurred in the town's "climate protection and sustainable community project." (You indicate that the county does not currently have its own "climate protection plan," nor has the county agreed to pay for services from WSU Extension for climate change-related issues.) The proposed interlocal agreement states that the town has committed to implementing a "climate action plan" to reduce emissions by year 2020 to 20% below year 2000 levels and to encourage more sustainable practices at the individual and municipal levels. Under the interlocal agreement, WSU Extension would assist the town to implement the plan. The Town of Coupeville would obtain the following services from WSU Extension:
 1) Develop an education program to set green power goals and educate the community about the green power program offered by the private utility company that serves the town;
 2) Advise the town on smart growth land use planning; [original page 3]
 3) Implement recycling programs for the town;
 4) Conduct an energy audit of the town wastewater treatment plant; and
 5) Educate the community on sustainability practices.
Interlocal agreements are authorized by RCW 39.34.080, the Interlocal Cooperation Act, which provides:
 Any one or more public agencies may contract with any one or more other public agencies to perform any governmental service, activity, or undertaking which each public agency entering into the contract is authorized by law to perform: PROVIDED, That such contract shall be authorized by the governing body of each party to the contract. Such contract shall set forth fully the purposes, powers, rights, objectives, and responsibilities of the contracting parties.
"Public agencies" is defined to include both counties ("political subdivisions" of the state) and municipal corporations. RCW 39.34.020(1). As the statute indicates, each entity must have the independent authority to perform the services that they will carry out under the interlocal agreement.Accord AGO 1990 No. 4, at 7; AGO 1969 No. 8, at 5 (the Interlocal Cooperation Act does not authorize the exercise of any new substantive powers by public agencies). "A municipal corporation is limited in its powers to those granted in express words, or to those necessarily or fairly implied in or incident to the powers expressly granted, and also to those essential to the declared objects and purposes of the corporation." Okeson v. City ofSeattle, 159 Wn.2d 436, 445, 150 P.3d 556 (2007). In this regard, we note that the Legislature, in Engrossed Second Substitute H.B. 2815, 60th Leg., Reg. Sess. (Wash. 2008), has called for a state program to reduce vehicle miles traveled in Washington and a planning process that involves collaboration with local governments. Laws of 2008, ch. 14, § 8 (subject to specific funding in the 2008 omnibus appropriations bill, § 15). The Legislature has also established statutory goals for reductions in greenhouse gas emissions. RCW 80.80.020. These goals, currently set forth in RCW 80.80.020, will be replaced by the goals set forth in Laws of 2008, ch. 14, § 3 (also subject to specific funding in the 2008 omnibus appropriations bill, § 15).[2] Laws of 2008, ch. 14, § 13. Finally, Engrossed Second Substitute S.B. 6580, 60th Leg., Reg. Sess., § 1 (Wash. 2008), provides in part:
 (1) The legislature finds that the state, including its counties, cities, and residents, must engage in activities that reduce greenhouse gas emissions and dependence upon foreign oil.
 (2) The legislature further recognizes that: (a) Patterns of land use development influence transportation-related greenhouse gas emissions and the need for foreign oil;
 (b) fossil fuel-based transportation is the largest source of greenhouse gas emissions in Washington; and (c) the state and its residents will not achieve [original page 4] emission reductions established in RCW 80.80.020 without a significant decrease in transportation emissions.
 (3) The legislature, therefore, finds that it is in the public interest of the state to provide appropriate legal authority, where required, and to aid in the development of policies, practices, and methodologies that may assist counties and cities in addressing challenges associated with greenhouse gas emissions and our state's dependence upon foreign oil.
With these recent legislative enactments as background, we turn to an analysis of town authority to expend funds to obtain services from WSU Extension. One part of the proposed interlocal agreement is establishment of a recycling program. Under RCW 35.21.152, towns have authority to develop systems for solid waste handling, which may include recycling. Another part of the interlocal agreement is to obtain advice on "smart growth land use planning." The town has a comprehensive plan and zoning regulations and may retain WSU Extension to provide consultation to the town government on smart growth as part of planning efforts. A third aspect of the interlocal agreement relates to a wastewater treatment plant operated by the town, which is within town authority pursuant to RCW 35.92.020. It is within the town's authority to retain WSU Extension to conduct an energy audit for purposes of identifying potential improvements and cost savings in the operation of its plant.
In addition to these emission reduction efforts in town operations, the town wants to set green power goals for its citizens; educate its citizens about the green power programs offered by the electrical utility that serves town residents; and provide information to its citizens about sustainability practices. These community education efforts support the town's solid waste and zoning programs and will assist the town as the state moves forward with emission reduction planning that will eventually involve local governments.
In sum, Washington State will have climate change programs and emission reduction targets which will, at the very least, impact local governments and perhaps require the participation of local governments. Local governments may make the policy choice to incorporate sustainability and climate change analysis into their programs. We therefore conclude that the town has authority to enter the proposed contract with WSU Extension.
Although the town could contract directly with WSU Extension for the program, the question you pose is whether a county and city could enter into an interlocal agreement under which the town would carry out these programs with the assistance of WSU Extension. We conclude that, similar to the town, the county also has authority to operate solid waste, recycling, and wastewater treatment systems and to adopt comprehensive plans and zoning ordinances. RCW 36.58.040, .70A.040, .94.020. The county therefore would have the authority to contract with WSU Extension to provide consulting and related services (and community outreach and education) that reasonably assist the county in carrying out such activities.
Of course, whether the interlocal agreement serves the interest of the county is a policy decision for county officials. There is nothing that would require the county to enter this interlocal agreement.
[original page 5] We trust that you will find the foregoing to be of assistance.
ROB McKENNA Attorney General
GREGORY J. TRAUTMAN Assistant Attorney General
:pmd
[1] "Climate change" is defined as "a change of climate attributed directly or indirectly to human activity that alters the composition of the global atmosphere." "Clean energy activities" is defined as: "(a) Activities related to renewable resources including electricity generation facilities fueled by water, wind, solar energy, geothermal energy, landfill gas, or bioenergy; (b) programs and industries promoting research, development, or commercialization of fuel cells and qualified alternative energy resources as defined in RCW 19.29A.090; (c) energy efficiency measures or technologies; and (d) technologies designed to significantly reduce the use of or emissions from motor vehicle fuels." RCW 28B.30.640.
[2] Funding for these measures has now been provided in Engrossed Substitute H.B. 2687, 60th Leg., Reg. Sess., § 302(31) (Wash. 2008) (Laws of 2008, ch. 329) (the 2008 Supplemental Operating Budget, filed on April 2, 2008).